

**FILED**
April 26, 2024 11:45 AM
ST-1995-CV-00459
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

KAREN UNDERWOOD,[1]
(Charles A. Kaplanek III),

              Plaintiffs,

    v.

BRUCE W. STREIBICH,

          Defendant,

_____

WARREN STRYKER and
MARGARET STRYKER,

      Intervening Plaintiffs,

_____

ARTHUR SCHMAUDER, ELIZABETH
McGUIRE, and BLUE WATERS
RETREAT, LLC,

      Intervening Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO. ST-95-CV-00459**

Action for Declaratory Relief,
Preliminary and Permanent
Injunctive Relief and Damages

Cite as 2024 VI Super 19

**MICHAEL FITZSIMMONS, ESQ.**
Duensing & Casner
9800 Buccaneer Mall
P. O. Box 6785
St. Thomas, V. I. 00804
*Attorneys for Plaintiff and*
*Intervening Plaintiffs*

**CAROL ANN RICH, ESQ.**
5194 Dronningens Gade, Ste 3
At Hibiscus Alley
St. Thomas, V.I. 00802
*Attorneys for Defendant*

**MATTHEW J. DUENSING, ESQ.**
Duensing & Casner
9800 Buccaneer Mall
P.O. Box 6785
St. Thomas, V. I. 00802
*Attorneys for Plaintiff*
*and Intervening Plaintiffs*

**G. ADAM THORP, ESQ.**
5194 Dronningens Gade, Ste.3
At Hibiscus Alley
St. Thomas, V.I. 00802
*Attorneys for Defendant*

---

[1] In 1995, this action was brought by the original plaintiff, Karen Underwood (Underwood). On June 30, 2016, Underwood deeded Parcel No. 4-27 Estate Tabor & Harmony which is the subject of this land dispute to her son Charles A. Kaplanek III (Kaplanek III), and on March 4, 2022, the Court accepted Kaplanek III as Underwood's successor and party-in-interest. The names have been used interchangeably throughout these proceedings and filings, thus, all references to Underwood as Plaintiff also apply to Kaplanek III as her successor.

**MARK D. HODGE, ESQ.**
Hodge & Hodge
1340 Taarneberg
St. Thomas, V.I. 00802
*Attorneys for Intervening Defendants*

**CARTY, Senior Sitting Judge**

## MEMORANDUM OPINION
**(Filed April 26, 2024)**

¶1.   **UPON REMAND** from the Supreme Court of the Virgin Islands, this matter came on for a bench trial on April 3rd, 4th, and 5th, 2023. This case arises out of a land dispute regarding a right-of-way located at Estate Tabor & Harmony, Nos. 5 & 6 East End Quarter, St. Thomas, Virgin Islands. On March 23, 2021, the Supreme Court affirmed the trial court's ruling that there is an implied easement over Parcel No. 4-26. The case was remanded back for the determination of the location and scope of the easement on the 1957 Public Works map situated over four (4) one-acre parcels of land. On April 4, 2023, a site visit was conducted at Parcel No. 4 Estate Tabor & Harmony with all parties present and testimony taken from expert surveyors: Ryan Wisehart (Wisehart) of Brian Moseley & Associates, Inc. on behalf of the Plaintiff and Intervening Plaintiffs (collectively "Plaintiffs") and Harry Gauriloff (Gauriloff) of Marvin Berning & Associates on behalf of the Defendant and Intervening Defendants (collectively "Defendants").

¶2.   Prior to the site visit, the surveyors were charged with the responsibility of identifying the precise location by metes and bounds of the easement as illustrated on PWD B9-31-T57 map dated February 1958 (referred to as "T57") and subdivision plan filed with the Government of the Virgin Islands by the then-landowners, Marshall B. Dierssen and Sidney C. Dierssen (the Dierssens). Each surveyor was required to travel to the site, without involvement of any of the parties and at separate times, to place color-coded flags depicting the exact location of the easement based on their expertise.

¶3.   The Plaintiffs contend there is an implied easement on T57 which allows for vehicular access to their properties situated at Parcel Nos. 4-27 and Parcel 4-28 and Drawing No. 3654-3 as produced by their expert surveyor witness has properly defined the boundaries of the

easement. Defendants contend the T57 R.O.W. no longer exists because portions thereof were deeded away in 1961 and 1962 and the owners of Parcel Nos. 4-22A, 4-22B, and 4-26 have not granted Plaintiffs permission to traverse upon their private driveway to access Plaintiffs' properties. Defendants further contend the Dierssens did not construct the existing concrete paved road as they had no intention to create a road as they did with the three private road systems throughout the subdivision. Thus, Plaintiffs must therefore access their properties from the lower private road.

¶4. Incorporated in this memorandum opinion are the findings of fact and conclusions of law based on the evidence adduced at trial, evidence on the record, stipulations by the parties, the procedural record, exhibits, and all additional evidence deemed pertinent. The single mandate before this Court is to establish the location and the scope of the implied easement as depicted on the T57map, situated on Parcel Nos. 4-26, 4-27, and 4-28, Estate Tabor & Harmony. As explained below, this Court finds the implied easement as depicted on T57 lies across Parcel Nos. 4-22A, 4-22B, 4-26, 4-27 and terminates at the boundary perimeter of Parcel No. 4-28, in favor of the Plaintiffs. Due to multiple conveyances over several decades and for the purpose of clarity, it is necessary for this Court to start by illustrating the property transfers from 1958 until present.

## FINDINGS OF FACT

### A. Conveyances of Parcels

1. On June 6, 1956, Marshall and Sidney Dierssen purchased Parcel No. 4 Estate Tabor & Harmony, Nos. 5 & 6 East End Quarter, St. Thomas, Virgin Islands consisting of 110.58 undeveloped acres. *Master Exhibit 1* (Map A-3-62-T45); *Master Exhibit 7, Streibich v. Underwood,* 74 V.I. 492 (2021).

2. In February 1958, the Dierssens filed subdivision plan PWD B9-31-T57("T57") with 19 lots consisting of Parcel No. 4-18 through Parcel No. 4-36. *Master Exhibit 2, Streibich* at 492.

3. The Estate Tabor & Harmony subdivision has one main road which branches off into three

private road systems which were fully established in 1958 such that the Dierssens were able to commence property sales. The T57 map depicts each road as a "private road" drawn with detailed metes and bounds. *Master Exhibit 2.*

4. During the development of Parcel No. 4, the Dierssens also designated a particular area as the right-of-way as depicted on T57 (the "T57 R.O.W.") which traversed and impacted Parcel Nos. 4-22, 4-26, 4-27, and 4-28. Parcel No. 4-26, Parcel No. 4-27, and Parcel No. 4-28 are abutting parcels on a hillside facing the Atlantic Ocean. Parcel No. 4-22 was subdivided into 4-22A and 4-22B, with the entrance off the main road being situated on Parcel No. 4-22B. Parcel No. 4-22B abuts Parcel No. 4-25 which is adjoined to Parcel No. 4-26. *Master Exhibit 2.*

### i. Parcel No. 4-22A

5. Parcel No. 4-22 consisted of 2.42 acres which was subdivided into Parcel No. 4-22A, 1.03 acres, pursuant to PWD No. F9-741-T61 (T61), and Parcel No. 4-22B, consisting of 1.00 acre, pursuant to PWD No. C9-47-T62 (T62). This division left a remainder of .39 acre. *Master Exhibit 2, Master Exhibit 3, Master Exhibit 4.*

6. On May 25, 1961, the Dierssens registered PWD No. F9-741-T61, which defined the parcel boundaries of 4-22A. Two portions of the T57 R.O.W. are incorporated within the boundaries of 4-22A, (with one portion being totally encompassed in 4-22A) as shown on Defendants' surveyor's map overlay. *Master Exhibit 3; Master Exhibit 46, ID-102 (Guariloff Survey Report).*

7. On March 15, 1962, the Dierssens conveyed Parcel No. 4-22A to Robert F. Merwin, Trustee for the Richard A. Merwin Trust (Trust No.1). *Master Exhibit 10.*

8. The deed as well as all other deeds from the Dierssens contained restrictions and covenants, including the following language:

> "TOGETHER with all the appurtenances and all the estate, title, rights, and interest of the parties of the first part, their heirs and assigns, in and to said premises, including a perpetual easement, to the party of the second part, his heirs and assigns, to run with the land over all roads in Parcel No. 4 which

are now in existence or shall hereafter be constructed for ingress to and egress from the Public Road or otherwise and subject to the following restrictions",
…

(i) "Easements and rights-of-way are hereby expressly reserved for the creation, construction and maintenance of utilities, such as gas, water, telephone, telegraph, electricity, storm drains and land drains, public, private, and quasi-public as well as for any public, private or quasi-public utility or function deemed necessary and/or expedient by the parties of the first part for the public health and welfare. Such easements and rights-of-way shall be confined to the rear five (5) feet of every lot and five (5) feet along the side of every building plot and along every street of the subdivision. The parties of the first part hereby reserve the exclusive right to dedicate the roads, streets and avenues abutting the aforesaid property and running through Parcel No. 4 to public use;"

(j) "The common roadways shall be constructed by and at the cost and expense of the Parties of the first Part in a proper manner with adequate ditches, drains and culverts to provide proper drainage. Thereafter, the parties of the first part, the party of the second part, and all subsequent purchasers of Parcel No. 4 Estate Tabor and Harmony shall maintain the road upon which their property abuts in Parcel No. 4 in reasonably good condition on a pro rate expense basis, according to the acreage of the sub-divided residential parcels abutting on said road, until such time as the Government accepts a dedication of said road." …

(k) "The covenants, restrictions, easements, and rights-of-way set forth above shall be included in all subsequent deeds of subdivision of Parcel No. 4 Estate Tabor & Harmony."

9. On July 3, 2007, Richard A. Merwin (successor trustee) individually and the Richard A. Merwin Trust (Trust No. 1) transferred Parcel No. 4-22A to Bruce W. Streibich, Elizabeth B. Streibich, and John K. Streibich. *Master Exhibit 29.*

10. On October 26, 2011, Bruce W. Streibich, Elizabeth B. Streibich, and John K. Streibich conveyed Parcel No. 4-22A to Bruce W. Streibich. *Master Exhibit 31.*

11. T61 depicts the T57 R.O.W. as an "estate road" that follows a similar path including the second switchback as shown on T57. *Master Exhibit 3.*

### ii. Parcel No. 4-22B

12. On August 29, 1962, the Dierssens registered PWD No. C9-47-T62 ("T62"), which

created and defined parcel boundaries of 4-22B. *Master Exhibit 4.*

13. On November 9, 1962, the Dierssens conveyed Parcel No. 4-22B, 1.00 acre, pursuant to T62 (not including the R.O.W.) to Thomas O. Cook and Nancy H. Cook. The deed specifically states,"[t]he whole comprising an area of 1.0 U.S. Acre, not including the right-of-way." *Master Exhibit 12.*

14. On June 9, 1964, the Cooks conveyed Parcel No. 4-22B, by warranty deed, to Arthur E. Schmauder and Violet Schmauder. *Master Exhibit 14.*

15. On July 26, 1985, Violet E. Schmauder conveyed Parcel No. 4-22B to the Violet E. Schmauder Trust by quitclaim deed.[2] *Master Exhibit 18.*

16. On August 20, 2007, Arthur R. Schmauder, Trustee of the Violet E. Schmauder Trust, conveyed Parcel No. 4-22B, by fiduciary deed, to the Schmauder beneficiaries and a limited liability company: Verna C. Ruan, Arthur R. Schmauder, Elizabeth A. McGuire (Trust Beneficiaries) and Blue Waters Retreat, LLC. *Master Exhibit 30.*

17. Blue Waters Retreat, LLC consists of a building that sits upon Parcel No. 4-22B. *April 5, 2023, Trans. pp.6-8.*

18. T62 depicts the T57 R.O. W. as the "Secondary Estate Road" and represents a similar path of the T57 R.O.W. *Master Exhibit 4.*

19. The deeds for Parcel No. 4-22A (incorporating T61) and Parcel No. 4-22B (incorporating T62) did not expressly reference T57 because T61 and T62 depicted the metes and bounds only for the purpose of the subdivided Parcel No. 4-22. However, T62 implicated T57 by the notation — not including the R.O.W. — shown as the "secondary estate road". The only R.O.W. in existence in 1962 was the T57 R.O.W.

20. T61 depicted an area designated as "Estate Road" extending from Parcel No. 4-22B, through Parcel No. 4-26, across Parcel No. 4-27 and ending at Parcel No. 4-28.

21. T62 depicted the same area as "Secondary Estate Road" extending from Parcel No. 4-22B, through Parcel No.4-26, across Parcel No. 4-27 and ending at Parcel No. 4-28.

22. The Dierrsens executed both deeds with maps T61 and T62 that depicted similar but not

---

[2] The record is silent as to what transpired between 1964 and 1985 as there is no evidence of a transfer from Arthur E. Schmauder and Violet Schmauder to Violet E. Schmauder.

exact paths to the T57 R.O.W. as it was the Dierssens' intentions to grant access to Parcel Nos. 4-22A, 4-26, 4-27, and 4-28. Without the T57 easement, Parcel No. 4-22A would have been landlocked.

23. Therefore, the T61 and T62 maps are relevant only to depict the sub-division of Parcel No. 4-22.

### iii. Parcel No. 4-25

24. On March 21, 1958, the Dierssens conveyed Parcel No. 4-25, consisting of 1.31 acres to Robert Moss, by warranty deed, and incorporated by reference T57. *Master Exhibit 8.*

25. On May 23,1974, Verna C. Ruan purchased Parcel No. 4-25.[3]

26. Arthur R. Schmauder and Elizabeth A. McGuire inherited Parcel No. 4-25 from an Adjudication dated January 24, 2017, of the *Estate of Verna Clark Ruan,* ST-2016-PB-00069.

27. Of particular note, Parcel No. 4-25 is not affected by the T57 easement as it shares a point, not a boundary line, in common with T57. Unlike the other parcels, there is no overlapping or encroachment of T57 over Parcel No. 4-25, therefore no rights of the property owners are affected. *See Master Exhibit 46, ID-101 to ID-104.*

### iv. Parcel No. 4-26

28. On November 9, 1962, the Dierssens conveyed Parcel No. 4-26, by warranty deed, consisting of 1.14 acres to Norman Brilliant and June Brilliant (the Brilliants), and incorporated by reference map T57. *Master Exhibit 11.*

29. On August 15, 1969, the Brilliants conveyed, by warranty deed, Parcel No. 4-26 to Sylvia B. Weaver (Weaver), and incorporated by reference map T57. *Master Exhibit 15.*

30. On August 6, 1981, Weaver conveyed, by warranty deed, Parcel No. 4-26 to Brenton E. Battles and Susan Lugo Battles (the Battles). This deed provided, *inter alia*, the following

---

[3] Verna C. Ruan died on June 23, 2015, and her estate was admitted to probate on November 7, 2016. Probate court records reflect that she purchased Parcel No. 4-25 on May 23, 1974, from Morris Paiewonsky and Hulda Paiewonsky. The record is silent however regarding transfers or conveyances between 1958 and 1974, between Robert Moss and other grantees, if any, prior to the Paiewonskys' ownership and until Verna Ruan's purchase on May 23, 1974. *See Estate of Verna Clark Ruan*, ST-2016-PB-00069, and Adjudication entered on January 24, 2017, fns.1 &2.

language:

> "SUBJECT, HOWEVER, to the covenants, restrictions, easements, rights-of-way, and agreements set forth in or attached to a deed dated November 9, 1962 from Marshall B. Dierssen to Norman Brilliant and June Brilliant recorded November 9, 1962 in volume 6-L, page 162, No. 3059, in said office and to the easements and rights-of-way or shown on said Drawing No. B9-31-T57;"
>
> *Master Exhibit 16*

31. After purchasing Parcel No. 4-26, the Battles constructed the house in the 1980s that presently sits on the property after registering the building plans with the Virgin Islands Department of Planning and Natural Resources. *Defendant's Exhibit 1 (building plans); April 5, 2023, Trans. pp. 24-27.*

32. The Battles used the T57 easement across Parcel Nos. 4-22B and 4-22A to access their property to construct the home that now exists and did so consistently during their ownership of Parcel No. 4-26.

33. On August 17, 1989, the Battles sold Parcel No. 4-26 to Bruce and Katharine Streibich,[4] which deed incorporated by reference D9-4345-T88. *Master Exhibit 21, April 5, 2023, Trans. pp. 24-25.*

34. The surveyor's report containing the boundary description on T88 provides the following reference: "[b]earings are correlated with PWD No. B9-31-T57." *Master Exhibit 21.*

35. T88 depicts a corridor marked by dotted lines (as opposed to estate roads, which are drawn with solid lines), labeled as "20' easement to Parcels 4-27 and 4-28' and with the notations that 'dirt road is within this easement'" and 'exit to public road' see [T57].' *Streibich*, 74 V.I. 493, 494 (2021), *Master Exhibit 5.*

36. The "marked corridor is in a slightly different location from the R.O.W. depicted on T57. *Streibich*, 74 V.I. at 494; *Master Exhibit 2, Master Exhibit 5.*

37. Although the 1989 conveyance incorporated T88, all prior conveyances were subject to the easements of record through the chain of title of Parcel No. 4-26, and specifically

---

[4] At the time of filing the lawsuit in 1995, Bruce and Katharine Streibich were the owners of Parcel No. 4-26, but since then, Katharine passed away on February 28, 1999.

referenced T57. Streibich's T88 map boundary description survey also specifically referenced T57, therefore, Streibich was on record notice of the T57 20ft-wide easement.

38. Every purchaser or grantee of Parcel No. 4-26, the Brilliants, Weaver, the Battles, and the Streibichs all had record notice that Parcel No. 4-26 was subject to the right-of-way as shown and described on T57.

39. Throughout the Battles' use and the Streibichs' subsequent use of the same easement across Parcel Nos. 4-22B and 4-22A, Streibich utilized the same implied easement and continues to do so to this day. Neither the Battles nor the Streibichs needed permission from the property owners of Parcel Nos. 4-22A or 4-22B to use the easement.

### v. Parcel No. 4-27

40. Sidney C. Dierssen died on June 29, 1965. Two and a half years later, Marshall B. Dierssen died on January 18, 1968.[5]

41. On March 30, 1990, Macdonald Budd, Administrator *d.b.n. c.t.a.*[6] of the *Estate of Marshall B. Dierssen* and the *Estate of Sidney C. Dierssen,* appointed by the Probate Court of Farmington, Connecticut, executed an Administrator's Deed which conveyed Parcel No. 4-27, consisting of 1.15 acres, incorporating by reference T57, to Susan Laura Lugo. The Administrator's Deed provided, *inter alia,* the following language:

> "TOGETHER WITH all right, title, and interest of Grantor to use of the estate roads and rights-of-way shown of the aforesaid survey for access for ingress and egress"
>
> …
>
> "SUBJECT, HOWEVER, to easements, restrictions, covenants and agreements of record." *Master Exhibit 22.*

---

[5] As it pertains to Parcel No. 4-27, the record is silent as to any activity during the 22-year period between 1968 and 1990.

[6] Administrator *d.b.n. c.t.a.* refers to *de bonis non, cum testamento annexo.* When an administrator is appointed to succeed another, who has left the estate partially unsettled, he is said to be granted "administration *de bonis non;*" that is, of the goods not already administered. Black's Law Dictionary (2nd Ed.), https://thelawdictionary.org/. *Cum testamento annexo* is defined as with the will annexed. A term applied to administration granted where a testator makes an incomplete will, without naming any executors, or where he names incapable persons, or where the executors named refuse to act. Black's Law Dictionary (2nd Ed.), https://thelawdictionary.org/cum-testamento-annexo-l

42. On September 16, 1992, Susan Laura Lugo conveyed, by quitclaim deed, Parcel No. 4-27 to Susan Laura Lugo (Lugo) and George H. T. Dudley (Dudley), and incorporated by reference PWD No. D9-4961-T90. *Master Exhibit 23.*

43. On January 23, 1994, Lugo and Dudley conveyed, by warranty deed, Parcel No. 4-27 to Karen Renée Underwood, incorporating by reference PWD No. D9-4961-T90, which deed states in pertinent part:

> "TOGETHER WITH all appurtenances thereunto belonging and all the estate, title, and rights of the Grantors in and to said premises;"

> "SUBJECT, HOWEVER, to the covenants, restrictions, and easements of record." *Master Exhibit 24.*

44. The warranty deed from Lugo and Dudley to Underwood expressly conveys 'all right, title and interest of Grantor to use of the estate roads and **rights-of-way** shown on the aforesaid survey for ingress and egress.' This conveys any right or interest that already benefits the property; it does not create a new one. *Streibich,* 74 V.I. 504, fn 10.

45. PWD T90 depicts a 20ft wide "easement to public road" that runs across both Parcel No. 4-26 and Parcel No.4-27 and terminates at the boundary of Parcel No. 4-28. A surveyor's notation at the top left corner of the 20ft wide easement on T90 states, "see B9-31-T57". There is also an arrow pointing to the approximate location of the 20ft wide easement towards Parcel No. 4-28. This further supports the Plaintiffs' contention that the Dierssens intended to create an easement over Parcel No. 4-26 to allow Underwood to freely traverse the T57 easement. *Master Exhibit 6.*

46. Hence, the Dierssens' rights, title, and interest in the easement were transferred to Underwood when she acquired the property and Underwood had record notice that Parcel No. 4-27 was subject to the right-of-way shown and described on T90.

47. On June 30, 2016, Karen Renée Underwood conveyed, by quitclaim deed, Parcel No. 4-27

to her son, Charles Anthony Kaplanek III, and incorporated by reference T90. *Master Exhibit 32.*

48. Although the 1992, 1994, and 2016 deeds to Parcel 4-27 did not directly reference T57, the 1990 Administrator's Deed did, and with the notations on T90 referencing T57, Underwood had record notice of the easement across Parcel Nos. 4-26 and 4-27.

### vi. Parcel No 4-28

49. On April 23, 1963, the Dierssens conveyed Parcel No. 4-28, consisting of 1.08 acres, to George and Jean Vander May, by warranty deed. *Master Exhibit 13.*

50. On January 6, 1987, the Vander Mays conveyed Parcel No. 4-28 by warranty deed to Noreen Fretz and incorporated T57 by reference. *Master Exhibit 20.*

51. On March 30, 2001, Noreen Fretz a/k/a Noreen McCarthy conveyed Parcel No. 4-28 to Warren Stryker and Margaret Stryker, and incorporated T57 by reference. *Master Exhibit 25.*

52. All conveyances from 1963 to present incorporated T57 by reference. Therefore, the Strkyers have been placed on record notice of the easement across Parcel Nos. 4-26 and 4-27 terminating at the boundary perimeter of their property, Parcel No. 4-28.

### B. Procedural History

53. "On June 20, 1995, Karen Underwood filed suit in the Superior Court [of the Virgin Islands], requesting that the court declare that she had an easement over the alleged dirt road over Parcel No. 4-26." *Verified Compl. (June 20,1995); Streibich* at 494.

54. Underwood listed four causes of action that she claimed she is entitled to: (1) an express easement, (2) an easement by prescription, (3) an easement by estoppel, and (4) an easement by implication. *Compl. pp. 6-7.*

55. In her count asserting rights to an easement by implication, "Underwood argued that she 'has acquired a right to use the existing [dirt road] by implication based upon the references in

11

the deeds to [T57] showing a road, and based upon the public policy of avoiding the economic waste that would occur if she were required to create a road in exact conformance with that depicted on [T57] rather than using the road currently in existence.'" *Complaint para. 22-23; Streibich,* 74 V.I. at 509.

56. Streibich filed an Answer on August 18, 1995, followed by several motions over a period of time. *Streibich* at 494.

57. On May 14, 2002, Warren and Margaret Stryker, owners of Parcel No. 4-28, moved to intervene in this matter and adopted all pleadings and allegations filed by Underwood. *Intervening Compl. (May 14, 2002); Streibich,* 74 V.I. at 494-95.

58. The Strykers' motion to intervene was granted and by incorporating Underwood's allegations, the Strykers asserted a claim to the same easement and further presented the following six causes of action: (1) an injunction prohibiting Streibich from preventing their use of the easement (2) trespass, (3) nuisance, (4) slander of title, (5) interference with a contractual relation, and (6) interference with prospective contractual relations. *Complaint in Intervention, pp. 3-5.*

59. In the memorandum opinion filed on February 25, 2019, the Superior Court ruled on a motion for summary judgment in favor of Plaintiff Underwood preventing Defendant Streibich from blocking Underwood's access across the existing dirt road. The Superior Court held an implied easement exists over Parcel No. 4-26, to the benefit of the owners of Parcel Nos. 4-27 and 4-28.

60. On appeal, the Supreme Court of the Virgin Islands found that only two (2) express easements were created by the deed language: (i) a utilities easement over the rear portion of each parcel; and (ii) a roads easement held by all subdivision property owners to traverse the "roads" in Estate Tabor & Harmony that had been constructed by the Dierssens. *Streibich,* 74 V.I. at 502.

61. The Supreme Court held there is no express easement over Parcel No. 4-26, and affirmed the trial court's ruling that there is an implied easement over Parcel No. 4-26.

62. An implied easement exists when the grantors intended to create a servitude but neglected to

do so expressly. *Streibich*, 74 V.I. at 504.

63. An implied easement was created by reference to the maps that were incorporated into the deeds.

64. Plaintiffs determined there was no further need to pursue their original claims for easement by necessity, easement by prescription, or easement by estoppel due to the Supreme Court's ruling, therefore abandoned those claims.

65. On September 27, 2022, the Strykers, by stipulation, dismissed counts 2-6: trespass, nuisance, slander of title, interference with a contractual relation, and interference with prospective contractual relations.

66. Intervening Defendants Arthur Schmauder, Elizabeth McGuire and Blue Waters Realty, LLC, title holders of Parcel Nos. 4-22B and 4-25, did not become parties to this lawsuit until March 7, 2022, when the Court's order granting their renewed motion to intervene was entered on the docket.

67. Intervening Defendants were initially denied intervention based on their incorrect theory that they have a legally protected interest in preventing the use of an easement because it would increase traffic flow.

68. A bench trial was conducted from April 3, 2023 - April 5, 2023. *Order dated January 26, 2023.*

69. On April 4, 2023, a site visit was conducted to view the affected properties including Parcel Nos. 4-22A and 4-22B. To ensure a comprehensive understanding of the estate, a convoy consisting of court personnel and interested parties drove across all roadways starting from the main road onto all three (3) roadways of Estate Tabor & Harmony until all attendees converged at the entrance of 4-22B to begin the walk uphill and across the existing concrete pavement and dirt road until arriving at Parcel No. 4-28.

70. Master Exhibits 1- 32, 36, 37, 42-44 were stipulated to by the parties for admission.

71. Several other exhibits were also admitted into evidence at trial.

72. Photographs were taken by a Superior Court marshal, however, due to camera malfunction, the pictures were lost and the Court granted all parties the option of uploading their pictures of the site visit in a photo log.

## C.  Estate Tabor & Harmony Subdivision

73. There is one main road that leads from the entrance of the subdivision by two (2) stone pillars and continues down to the bottom of the hill with other private roads branching off into different directions. This road is the only one by which people can access the Estate Tabor & Harmony subdivision (the "main road")[7]. *Master Exhibit 2.*

74. "T57 shows three roads, labeled as 'private road' and drawn with detailed metes and bounds." *Master Exhibit 2; Streibich,* 74 V.I. at 492.

75. The private road that branches off to the right forms the lower parcel boundary of Parcel Nos. 4-26, 4-27, and 4-28 (the "lower road") and ends in a "turnaround," ("the lower road turnaround") at Parcel No. 4-29. *Master Exhibit 2.*

76. "T57 also shows a marked passage referred to as 'R.O.W.,' which has no metes or bounds or other descriptors. *Master Exhibit 2; Streibich,* 74 V.I. at 492; *See also April 4, 2023, Trans. pp. 60-62 (Wisehart indicating location of southern boundary and confirming T57 R.O.W. straddles boundary between Parcel Nos. 4-22A and 4-26).*

77. The area designated as the r i g h t - o f - w a y  o n  T 5 7 begins by branching off from the m ain r oad  approximately 75 feet from the northwest corner of the area designated "Parcel 4-22" in T57 and [trisects] that area, then it continues along the boundary line between the area designated "Parcel 4-22" and Parcel 4-26 (approximately half in each), then through Parcel No. 4-26 into Parcel No. 4-27 [terminating at Parcel No. 4-28]. *Master Exhibit 46 ID-000094 (Geographic Background); Master Exhibit 4 (T62 Map, showing the T61/T62 4-22A and 4-22B access as being from the "Main Estate Road"); Master Exhibit 48, p. 2, para. 1. (Parcel 4-22 was not subdivided until 1961.)*

78. T57 establishes that the R.O.W. is separate from the system of estate roads, and rather than form the boundaries of parcels, it burdens individual parcels. *Streibich,* 74  V.I. 503.

79. "The alleged dirt road is not located within the R.O.W. shown on T57." *Streibich, 74 V.I.*

---

[7] The "main" private road is not a formal label. There are no formal labels for the roads in Estate Tabor & Harmony. *See* Gauriloff's surveyor's report (*Master Ex.46. ID-000093*).

at 508. *See also Master Exhibit 46 (Defense expert) photos 1-7 reflecting R.O.W. is going uphill along boundary. April 4, 2023, Trans. pp. 60-66. (Plaintiffs' expert testimony confirming that the site visit party was standing (on the dirt path) outside of the T57 R.O.W.; Trans. pp. 70-71 (Defense expert also indicating the R.O.W. straddling boundary between Parcel No. 4-22A and Parcel No. 4-26); pp. 75-78 (indicating T57 R.O.W. in brush uphill from dirt road in Parcel 4-26 up to the 4-27 boundary); pp. 79-81,( Plaintiffs' surveyor testifying T57 R.O.W. in brush uphill from dirt road in 4-26 up to the 4-27 boundary); pp. 157-59 (Plaintiffs' expert confirming T57 R.O.W. is not the flat cleared dirt road); April 4, 2023, Trans. p. 168 (Defense surveyor confirming the light blue marking on surveyor exhibit is dirt road in comparison to T57 R.O.W.); p.180 (Defense surveyor confirmed blue marking on ID-000103 is dirt road).*

80. The Dierssens' deeds created two (2) express easements, "one general but confined to the 'rear five (5) feet of every plot and five (5) feet along the side of every building plot and along every street of the subdivision,'" and "one over 'all roads in Parcel No. 4 which are now in existence or shall hereafter be constructed for ingress and egress from the Public Road or otherwise ....'" *Streibich*, 74 V.I. at 502.

81. All deeds transferred from the Dierssens contained the following language, with the exception of the deeds to Parcel Nos. 4-22A and 4-22B which did not expressly refer to T57,

> . . . as more fully shown on [T57], a copy of which is hereto annexed and made a part hereof as though more fully set forth herein...
>
> TOGETHER with all the appurtenances and all the estate, title, rights and interest of the parties of the first part [the Dierssens], their heirs and assigns, in and to said premises, including a perpetual easement to the parties of the second part [the Grantees], their heirs and assigns, to run with the land over **all roads** in Parcel No 4 which are now in existence or shall hereafter be constructed for ingress and egress from the Public Road or otherwise, and subject to the following restrictions:
>
> ...
>
> (i) Easements and rights-of-way are hereby expressly reserved for the creation, construction and maintenance of utilities, such as gas, water, telephone, telegraph, electricity, storm drains and land drains, public,

quasi-public, and private, as well as for any public, private or quasi-public utility or function deemed necessary and/or expedient by the parties of the first part for the public health and welfare. Such easements and rights-of-way shall be confined to the rear five feet of every parcel and five feet along the side of every building parcel and along every street of the subdivision.

(j) The common roadways shall be constructed by and at the cost and expense of the Parties of the first Part in a proper manner with adequate ditches, drains and culverts to provide proper drainage. Thereafter, the parties of the first part, the parties of the second part, and all subsequent purchasers of Parcel No. 4 Estate Tabor and Harmony shall maintain the road upon which their property abuts in Parcel 4 in reasonably good condition on a pro rata expense basis; according to the acreage of the sub-divided residential parcels abutting on said road, until such time as the Government accepts a dedication of said road."

82. "Further, the deeds expressly reserved the title to and burden of building "roads" to the Dierssens, but they did not reserve any rights in the R.O.W. Finally, while the "roads" form the bounds between parcels, the R.O.W. instead burdens individual parcels. The express easement over roads therefore does not apply to the R.O.W." *Streibich*, 74 V.I. at 503.

83. The area designated as Parcel No. 4-22 on T57 includes the listed acreage as 2.42 U.S. acres. After the subdivision, portions of the T57 R.O.W. that represent the remainder of .39 acre are scattered in several areas along the route of the T57 R.O.W. over Parcel Nos. 4-22A and 4-22B.

84. Each map, T61 and T62, defined the boundaries depicted thereon for Parcel No. 4-22A and 4-22B, respectively.

85. On T61, the T57 R.O.W. is labelled, "Estate Road" and on T62 it is labelled "Secondary Estate Road." *Master Exhibit 3; Master Exhibit 4; April 4, 2023; Trans. p. 30 (indicating 4-22B boundary is also the secondary estate road boundary); Trans. pp. 169-70 (Defendants' expert confirming T61 and T62 defined parcel boundaries.) (Defendants' expert confirming T61 and T62 generally are close to the location of the right-of-way, but not precise because a compass, a ruler, and a scale were used to establish boundaries).*

86. The first deed for Parcel No. 4-22A defines the boundaries of the parcel by reference to the southern boundary of the T61 "Estate Road" within the remainder of the area designated Parcel No. 4-22 in T57 remaining in the Dierssens' name. *Master Exhibit 46, p.3; Geographic Background (Defense expert report p.3).*

87. The first deed for Parcel 4-22B defines the boundaries of the parcel, in part, by reference to T62 "Secondary Estate Road" with the lower southwestern boundary of Parcel No. 4-22B defined by the northern boundary of the lower portion of the T62 "Secondary Estate Road" with the remainder of the area designated "Parcel 4-22" in T57 remaining in the Dierssens' name. *Master Exhibit 46, p.3; Geographic Background (Defense expert report, p.3).*

88. Despite the northern boundaries of T61 andT62 not matching and the southern boundaries of T61 and T62 not matching, both roads follow a similar path to the T57 R.O.W. including the switchbacks depicted on both maps.

89. Two portions of the T57 R.O.W. were incorporated into Parcel No. 4-22A, as shown in both Plaintiffs' surveyor's report and Defendants' surveyors' map. Two portions of T57 R.O.W. were fully incorporated into Parcel No. 4-22B. *Master Exhibit 48, p.2 (estate road partly supplants R.O.W. within Parcel No. 4-22); Master Exhibit 46 (surveyor overlays ID-101 to ID-104); Master Exhibit 4; April 4, 2023, Trans. pp. 118-19, (Plaintiffs' expert acknowledging T57 R.O.W. incorporated into 4-22A partially), pp.163-164 (Defendants' expert explaining colors on surveyor overlays ID-101- ID-104 and what those maps depict); Master Exhibit 3; Master Exhibit 46 (Gauriloff Report); Trans. p. 132 (Plaintiffs' expert testifying that T61 and T62 define parcel boundaries); Striebich 74 V.I. at fn. 15 (implication of an easement based on a map).*

### D. Expert Witnesses

90. Plaintiffs' expert, Ryan Wisehart, of Brian Moseley & Associates, Inc. was qualified as an expert in land surveying. *Master Exhibit 48 (redacted version-deleting last 2 para-*

*graphs of expert report); April 4, 2023, Trans. p.7, pp.102-03 (testifying to qualifications).*[8]

91.   Defendants' expert, Harry Gauriloff, of Marvin Berning & Associates, was qualified as an expert in land surveying. *Master Exhibit 46; April 4, 2023, Trans. p. 7.*[9]

92.   Defendants' expert Paul Ferreras was qualified as an engineering expert and provided deposition testimony on engineering evaluation, cost, economic feasibility, and environmental impact of constructing a road for vehicular access on the T57 R.O.W. to Parcel Nos. 4-27 and 4-28 in compliance with Virgin Islands Department of Public Works construction requirements and other zoning laws. *Master Exhibit 47; Master Exhibit 65.*

93.   At the site visit, testimony was taken sequentially starting with the Defendants' expert. Each expert identified his respective flag markings as everyone traversed the concrete pavement and dirt road leading from the intersection of the main road and the entrance of Parcel No. 4-22B to Parcel No. 4-28.

94.   Plaintiffs' expert used lime yellow flags to mark the boundary points of the T57 R.O.W. as well as various points at which the T57 R.O.W. intersected with the boundaries of Parcel Nos. 4-22A, 4-25, 4-26, 4-27, and 4-28. *April 4, 2023, Trans. p. 40 -41.*

95.   Defendants' expert placed pink flags to mark the boundary points of the T57 R.O.W. as well as various points at which the T57 R.O.W. intersected with the boundaries of Parcel Nos. 4-22B, 4-22A, 4-26, and 4-27. *April 4, 2023, Trans. p. 9.*

96.   A combination of maps, deeds, bound post overlays (graphic reproductions), surveying instruments and science were used to establish the location and scope of the T57 R.O.W.

97.   Defendants' expert testified to his placement of flags from the entrance of the T57 R.O.W. identifying both the northern and southern boundaries of the T57 R.O.W. in relation to Parcel No. 4-22B.

---

[8]   Plaintiffs other proffered experts were not permitted to testify, as their testimonies were wholly irrelevant to the implied easement and neither were their reports considered. *See* Stipulation dated March 27, 2023, excluding Tyler Edwards and Corby Parfitt and Order dated March 30, 2023.

[9]   Defendants other proffered expert was not permitted to testify for the same reason; and neither was her report considered. S*ee* Order, March 28, 2023 *(excluding appraiser Elissa Runyon; Stipulation dated March 27, 2023).*

98. The parties traversed the paved concrete road uphill where additional testimony was taken from the Defendants' expert. The entire concrete road including the two switchbacks is approximately 8' in width and situated entirely within the Secondary Estate Road as depicted on T62. (*Defendants' expert surveyor overlay, Master Exhibit 46; ID-102 & ID-104*).

99. Defendants' expert identified the inner and outer boundaries of the T57 R.O.W. and those of the T61 "Estate Road" and T62 "Secondary Estate Road". *April 4, 2023, Trans. p. 9.*

100. Defendants' expert testified and demonstrated on his survey map that a portion of the dirt road is located within the R.O.W. shown on T57." *Master Exhibit 46, ID-103 (surveyor's overlay with blue path depicting first portion of dirt road within the T57 easement straddling the boundary line of approximately the first half of Parcel No. 4-26. The dirt road continuing inward (east) upon Parcel No.4-26 veering outside of the easement, and the T57 easement tracking uphill. (Surveyor's exhibit - photos 2-1 to 2-7 depicting R.O.W. going uphill along boundary of 4-22A and 4-26); April 4, 2023, Trans. pp. 60-66, pp. 80-81 (confirming that the site visit party was standing outside the R.O.W.); pp. 70-71 (Defense expert indicating R.O.W. straddling boundary); pp. 75-78 (indicating T57 R.O.W. is in brush uphill from dirt road in 4-26 up to the 4-27 boundary; both experts agree on width and distance of T57 R.O.W. in that area); pp. 79-81 (Plaintiffs' surveyor testifying T57 R.O.W. is in brush uphill from dirt road in Parcel No. 4- 26 up to the 4-27 boundary).*

101. Defense surveyor confirming the light blue marking on surveyor's exhibit is the dirt road of which approximately half is located within the T57 R.O.W. and the other half is located within the boundary line of Parcel No. 4-26. *April 4, 2023, Trans. p.180.*

102. Defense surveyor confirmed blue marking on Master Exhibit 46, ID-103 is dirt road. *May 16, 2023 Photo Log, Photo 2-3 (showing juxtaposition of dirt road and T57 R.O.W. with the T57 R.O.W. showing overgrown brush and vegetation).*

103. Defendants' expert confirmed a portion of the T57 R.O.W. is not the flat cleared dirt road.

*April 4, 2023, Trans. p. 168.*

104. Defense expert testified the concrete paved road is generally 8 to 10 feet wide and wider at the switchbacks. *April 4, 2023, Trans. p. 168.* The concrete paved road is not within the T57 R.O.W., but is within T61 and T62 estate roads. *Master Exhibit 46, ID-104.*

105. Plaintiffs expert surveyor's markings and testimony began at the intersection of Parcels No. 25[10] and No. 4-26, an area identified as the Point of Beginning on the expert's Drawing No. 3654-3 of the T57 R.O.W.

106. Parcel No. 4-25 lies between Parcel Nos. 4-22B and 4-26.

107. The Parties' survey experts varied their location of the shared 4-22A/4-25/4-26 bound post by approximately four and one-half feet (4 1/2 ft.) *April 4, 2023, Trans. pp. 39-41, pp. 48-49, pp. 55-56; pp.176-78 (Defendants' expert confirming photos of property line between 4-26 and 4-22A (Master Exhibit 46, ID-143 to ID-150)); April 5, 2023, Trans. p. 36; May 16, 2023, Photo Log, photo 2-21 (showing pink and far left lime yellow flagged markers indicating bound post locations), photo 2-20 (uphill view of pink and lime yellow flags), photo 2-18 (wide angle view of markers).*

108. Plaintiffs' expert testified there is approximately four and one-half feet (4½ ft.) difference between the southwest bound post of Parcel No. 4-26 that he marked and the bound post that Guariloff marked. *April 4, 2023, Trans. pp. 41, 55.*

109. Plaintiffs' expert left lime yellow flag facing the ocean represents the southwest corner of Parcel No.4-26 which is also the shared bound post of Parcel No. 4-25.

110. Plaintiffs' expert right lime yellow flag facing the ocean represents the intersection of the northern boundary of the T57 R.O.W. and the southern boundary of Parcel No. 4-26.

111. Plaintiffs' expert testified T57 is south of the boundary line between Parcel Nos. 4- 22A and 4-26, resting in 4-22A, with the northern line resting in the driveway of Parcel No. 4-26. *April 4, 2023 Trans. pp.61-63. (South is uphill into the brush.)*

112. Plaintiffs' expert further testified he used lime yellow tape to delineate the outer limits of

---

[10] Although the Intervening Defendants are also joint owners of Parcel No. 4-25, the intersection of the T57 easement and 4-25 represents a triangular point and has limited significance such that there was little discussion of the shared boundary post of Parcel No. 4-25 in these proceedings.

the T57 R.O.W. on both the north and the south side, however he did not extend the tape across the north boundary due to Streibich's home improvements (entrance of steps) that blocked his ability to set the tape from one point to the other. *April 4, 2023, Trans. p.51.*

113. Defendants' expert testified the T57 R.O.W. passes through the bound post of Parcel Nos. 4-22B, 4-25, and 4-26. *April 4, 2023, Trans. p. 56.*

114. Plaintiffs' expert also testified the approximate distance between the T57 south boundary and the north boundary line is twenty (20) feet wide. *April 4, 2023, Trans. p. 64.* The T57 R.O.W. crosses over along the hill. *April 4, 2023, Trans. p.75.*

115. Plaintiffs' expert Drawing No. 3654-3 of T57 R.O.W. depicts a 20ft wide easement across Parcel Nos.4- 26 and 4-27.

116. Plaintiffs' expert and Defendants' expert both agree, generally, on the location and the scope of the T57 R.O.W. *April 4, 2023, Trans. p. 77.*

117. With the exception of minor variations of a few feet at the Point of the Beginning of the T57 R.O.W. upon Parcel No. 4- 26, the Parties' survey experts did not differ in their location of the T57R.O.W.

118. In 2022, Streibich renovated and repaired the entrance to his home on Parcel No. 4-26; he resurfaced his existing entry stairs, and added a handrail to make the entrance safe and he redesigned the edges of the stairs to divert water and avoid flooding. *April 5,2023, Trans. pp. 46-51 (Defense Exhibits 2 and 3 photos).*

119. The improvements to the steps are important only to the extent that the steps were already built in the T57R.O.W., but are irrelevant to these proceedings because the repairs and enhancements did not expand any further into the T57R.O.W. *April 5,2023, Trans. pp. 24-27 (admitting Def. Ex. 1 (building plans as received from the Battles)); pp. 27-31; May 16, 2023, Photo Log 2-13, 2-14, 2-21, & 2-22.*

120. Engineering expert Paul Ferreras offered three alternative options for creating a road to access Parcel Nos. 4-27 and 4-28: *Option 1.* Use of the existing dirt road, except such traffic would be detrimental to Parcel No. 4-26 because it prevents any suitable roadway to be constructed that would align with the dirt road and zoning laws and construction

requirements; *Option 2.* a joint driveway constructed on the lower road to accommodate both parcels; and *Option 3.* separate driveways constructed on the lower road.

121. While these options may be more economically feasible than blasting the rock on the southern hillside within the T57 R.O.W., the engineering options are completely irrelevant to these proceedings because an implied easement exists on the T57 map.

## **E. The Parties**

122. Defendants Blue Waters Realty, LLC, Arthur Schmauder, and Elizabeth McGuire's wishes to have minimal traffic flow, when weighed against the Plaintiffs' unfettered rights to continual and uninterrupted ingress and egress upon the T57easement, are irrelevant and inconsequential. There is no evidence to show construction of homes on Parcel Nos.4-27 and 4-28 will negatively impact the Defendants, besides normal road wear and tear and construction activity.

123. The T57 map delineation of the R.O.W. is schematic yet sufficient to define its location. Its beginning and ending are plainly illustrated without ambiguity; the [servient] parcels are clearly labeled. (*Master Exhibit 48, p.2*).

124. The 57 R.O.W. pre-existed the sale of Parcel No. 4-22B in 1962 to Thomas O. Cook and Nancy H. Cook. Therefore, the Cooks and all subsequent purchasers were on record notice that an easement for ingress and egress existed across Parcel No. 4-22B for the benefit of the inner parcels.

125. The easement is depicted on T62 as the "Secondary Estate Road" with specific notation that the property boundaries do not include the right- of-way. This is evident of the Dierssens intent to create access to the other parcels.

126. The 57 R.O.W. pre-existed the sale of Parcel No. 4-22A in 1961 to Robert Merwin. Therefore, Robert Merwin and all subsequent purchasers were on record notice that an easement for ingress and egress existed across Parcel No. 4-22A for the benefit of Parcel Nos. 4-27 and 4-28.

127. The Court recognizes fragmented portions of the easement were conveyed in fee simple by the Dierssens to the owners of Parcel Nos. 4-22A and 4-22B, by warranty deed.

128. Yet, although the subdivision creating 4-22A and 4-22B out of Parcel No. 4-22 left

remaining portions in 4-22, such remainder did not cancel out the Dierssens strong intent of creating access to the inner parcels.

129. Further, the Schmauders placement of gravel in an area of approximately 20ft square space to create their driveway is not indicative of the Dierssens' intentional failure to complete an access road upon the right-of-way to Parcel No. 4-28.

130. Disproportionate and fragmented portions of the T57R.O.W. were deeded away inadvertently but it remains evident that the Dierrsens intended to have a right-of-way by creating T61 and T62 maps with an estate road. This estate road (secondary estate road, right-of-way) is the only road that exists which leads to the upper portion of Parcels 4-26, 4-27 and 4-28.

131. The term "secondary" also suggests this road was not intended to be part of the private road system with ditches and drains, but to represent a right to pass over the land of others to access the inner parcels.

132. The inadvertent conveyance is not a basis to conclude the entire T57R.O.W. is merely a driveway for the sole benefit of Parcel Nos. 4-22A, 4-22B, and 4-26.

133. The Dierssens did not intend to deed away parts of the T57R.O.W. when conveying Parcel Nos. 4-22A and 4-22B because they explicitly incorporated by reference T61 and T62 into the respective deeds to those parcels which created an estate road (and secondary estate road) which suggests their intent was to grant access to Plaintiffs to traverse the T57R.O.W., even though the three similar paths (T57, T61, andT62), are not identical by coordinates.

134. The Dierssens intent was to create access to Parcel No. 4-22A from the main road, failing which the lot would have been landlocked and by mere observation of the topography, the most suitable way to gain access to Parcel No. 4-22A is through Parcel No. 4-22B.

135. The most suitable way to gain access to Streibich's property and Blue Waters Retreat, LLC is by way of the same estate road through Parcel No. 4-22B.

136. As such, the Court can similarly conclude the Dierssens intended to also provide access to Parcel Nos. 4-27 and 4-28 particularly since the T57 map depicts a lengthy right-of-way

across all four Parcel Nos. 4-22B, 4-22A, 4-26, and 4-27.

137. The distance in length between the entrance from the main road to the Point of Beginning measures approximately 600 feet. *Master Exhibits 3, 4.*

138. The distance in length between the Point of Beginning to the western boundary of Parcel No. 4-28 measures 446.56 feet. *Plaintiffs' expert drawing no. 3654-3.*

139. Moreover, the subdivision between Parcel Nos. 4-22A and 4-22B into one-acre lots is consistent with most of the other 17 one-acre lots of Parcel 4 in Estate Tabor & Harmony. *Master Exhibit 2.*

140. By defining the boundaries of Parcel No. 4-22A and Parcel No. 4-22B, including using the borders of T61 and T62 to define parcel boundaries, T61 and T62 effectively defined the boundaries of the "Estate Road" and the "Secondary Estate Road".

141. This unambiguously demonstrates the estate road was intended to provide access to all five parcels 4-22A, 4-22B, 4-26, 4-27, and 4-28. *Master Exhibit 3; Master Exhibit 4; Master Exhibit 10; Master Exhibit 12; & Master Exhibit 46 (ID-103-106).*

142. When the Department of Planning and Natural Resources (DPNR) issued the August 27, 2002 permit to Warren Stryker "to groom the easement and to spread gravel" it was intended to clear Parcel Nos. 4-22A, 4-26 and 4-27 as depicted on the permit. *Master Exhibit 42.*

143. To conclude the permit was limited to Parcel No. 4-28, would be illogical because the easement terminated at the boundary of 4-28, and this would defeat the purpose of the government issuing the permit.

144. The reasoning that Plaintiffs abandoned the implied easement is faulty as it is evident Plaintiffs attempted to use the right-of-way on several occasions since 1994, but were stopped by Defendant Streibich on more than one occasion. No evidence was presented to show either Underwood, Kaplanek III, or the Strykers abandoned their interest in the Estate Road.

145. On May 5, 2003, Streibich placed a note on a vehicle threatening court action if the owner/operator of the vehicle on the premises did not move the vehicle. *Master Exhibit 45 K.*

146. Warren Stryker testified he had been blocked by Streibich. *Trans. April 3, 2023, pp.69-70.*

147. Further, the reasoning that the predecessors in interest of Parcel Nos. 4-27 and 4-28 should have stopped Brenton and Susan Battles from constructing the house on Parcel No. 4-26 so close and within the easement is also irrational as the predecessors had no control over what the Battles or other property owners did with their property.

148. Both expert surveyors agree on the location of the implied easement as depicted on T57 which starts at the intersection of the main road and continues along the concrete paved roadway that is currently in regular use by the Defendants and continues uphill beyond the two switchbacks and along the hillside straddling the boundary lines of Parcel Nos. 4-22A and 4-26 and across 4-27.

149. Intervening Defendants incorrectly claim there was a need to mention the T57 map in the 1962 transfer from the Dierssens to the Brilliants. This theory is misplaced because the purpose of creating the T61map had no bearing on Parcel No. 4-26. T61's only purpose was to depict the subdivision of 4-22 into two parcels. The Estate Road as depicted on T61 is the same R.O.W. on the T57 map, although not identical with bearings and distances, but with variations as shown by Defendants' expert, therefore negligible sporadic portions of T57 were inadvertently conveyed to the Merwin Trust in 1962.

150. Further, the T62 notation to T57 was sufficient to put potential buyers on notice of the existing R.O.W. Direct reference of T57 in the 4-22A and 4-22B deeds did not need to be specifically mentioned in the subdivision of Parcel No. 4-22 or any of the subsequent conveyances of Parcel Nos. 4-22A and 4-22B.

151. Intervening Defendants argument that there was an insufficient amount of time between the recordation of Parcel Nos. 4-22A and 4-26 on November 9, 1962, to reveal the T57map in the title search is irrelevant.

152. Intervening Defendants' arguments failed in their entirety because even if they were allowed to intervene on their original motion, the Supreme Court's decision would remain the same because the purpose of creating T61 and T62 was limited in scope and had absolutely no impact on the pre-existing T57 map.

153. Hence, no property owner needs permission from the owners of 4-22A, 4-22B, 4-25, or 4-26 to traverse the right-of-way because the Dierssens, by their actions, intended to create vehicular access to the inner parcels.

154. Defendants' arguments fail to overcome the convincingly overwhelming evidence that the Dierssens intended to grant a R.O.W. to future buyers of Parcel Nos. 4-26, 4-27, and 4-28.

## CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

1. This court has jurisdiction over this matter pursuant to Title 4 V.I.C. § 76.

2. The subject matter of the claims and defenses are claims relating to real property lying on the island of St. Thomas, United States Virgin Islands.

3. Venue is proper in this judicial district.

4. The Plaintiffs filed complaints in this Court, thus voluntarily appearing and waiving any objection to personal jurisdiction.

5. Defendant Streibich was properly served, and the Court has personal jurisdiction.

6. Intervening Defendants affirmatively sought to be made parties to this case, thus waiving any objection(s) to personal jurisdiction.

7. This Court has personal and subject matter jurisdiction.

### B. Easement by Implication-Map Reference: Grantor's Title and the Intended Scope of the T57 R.O.W.

8. An implied easement exists when the grantors intended to create a servitude but neglected to do so expressly. *Streibich v. Underwood*, 74 V.I. 488, 504 (V.I. 2021)

9. An implied easement was created by reference to the maps that were incorporated into the deeds.

26

10. The rule expressed in Restatement (Third) of Property: Servitudes § 2.13(2000) is the soundest rule for the Virgin Islands. *Streibich,* 74 V.I. at 506 (V.I. 2021).

11. Section 2.13 provided in pertinent part:

> In a conveyance or contract to convey an estate in land, description of the land conveyed by reference to a map or boundary may imply the creation of a servitude, if the grantor has the power to create the servitude, and if a different intent is not expressed or implied by the circumstances:
>
> > (1) A description of land conveyed that refers to a plat or map showing streets, ways, parks, open space, beaches, or other areas for common use or benefit, implies creation of a servitude restricting use of the land shown on the map to the indicated uses.
> >
> > (2) A description of the land conveyed that uses a street, or other way, as a boundary implies that the conveyance includes an easement to use the street or other way.
> > *Restat 3d of Prop: Servitudes, § 2.13 (2000); See also, Streibich at 505.*

12. T57 creates "an inference that the parties intended for there to be an easement, which any other party may rebut by pointing to evidence of a contrary intent, with the strength of the evidence needed to rebut the inference of an easement varying based on the strength of the evidence— particularly the explicitness of the map — used to support the inference. *Id.* at 506. *See also Brodhurst v. Frazier*, 57 V.I. 365, 370 (V.I. 2012).

13. T57 explicitly states that there is a R.O.W. and while the word 'easement" does not appear on T57, a "right-of-way" in 1957 was, by legal definition, an easement granting the holder the right to pass through property owned by another. *Id.* at 507.

14. Right-of-way: "[t]he right of passage or of way is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, or horseback, or in a vehicle, …through the estate of another." "When this servitude results from the law, the exercise of it is confined to the wants of the person who has it." *Black's Law Dictionary (2nd ed.).*

15. "Right-of-way in its strict meaning is the right of passage over another man's ground; and in its legal and generally accepted meaning,…it is a mere easement in the lands of others…." *Id.*

16. While there is no expressed R.O.W. Agreement, the Dierssens intended for there to be a right-of-way by such depiction on the T57 map.

17. The Supreme Court of the Virgin Islands recognized the R.O.W. when it stated "[t]he R.O.W. appears to bisect Parcel No. 4-22, then continue along the boundary line between Parcel Nos. 4-22A and 4-26 (approximately half in each parcel) and into Parcel No. 4-27." *Streibich* at 492.

18. The chain of title for the parcels and the maps demonstrate the Dierssens' intent was to include in the scope of the easement vehicular access.

19. Examination of the three Public Works maps, T57, T61, and T62 demonstrates that while all three maps depicting the right-of-way are not precisely consistent, by metes and bounds, it is indisputable that all three paths are similarly situated in the same area plus or minus a few feet within each other.

20. The "Estate Road" depicted in T61 lies across Parcel No. 4-22B and 4-22A in a similar manner to the path of the "Secondary Estate Road" in T62, which, in turn, they both follow the pattern of the "R.O.W." in T57, including the two switchbacks.

21. The Dierssens explicitly designated an area as the "Estate Road" on T61 and "Secondary Estate Road" on T62. T62 specifically lays out the acreage conveyed which **does not** include the right-of-way (secondary estate road). The original deeds of 4-22A and 4-22B conveyed by the Dierssens used the southern and lower southwestern boundaries of the roads to define the respective portions of the parcel boundaries.

22. This is also confirmed by Defendants' surveying expert in his report depicting the color-coded parcels and map overlays showing the concrete paved road, the existing dirt road, and

the T57 easement along with color-coded overlays of the T61 and T62 estate roads. See *Master Exhibit 46, ID-103 and ID-104.*

23. This is also confirmed by Plaintiffs' expert in his survey report and drawing scientifically calculating specific distances of the portion of the easement which starts at the Point of Beginning at Parcel No. 4-26. on the T57 R.O.W. and extends 446.56 feet in length to the boundary of Parcel No. 4-28.

24. "No use may be made of a right-of-way, different from that established at the time of its creation, so as to burden the servient estate to a greater extent than was contemplated." *McIntosh v. Prince,* 9 V.I. 3, 11 (V.I. Super. Ct. 1971); *Streibich* at 509, fn 17.

25. "It is important to note that the R.O.W. derived from the map and the use of the term 'right of way,' gives [the Plaintiff and Intervening Plaintiffs] only the right to pass across the R.O.W. and no more." *Streibich,* 74 V.I. at 509 fn.17. (*citations omitted*).

26. The T57R.O.W. is only for ingress and egress of the adjoining properties of the Plaintiffs.

27. Defendants' argument that the R.O.W. was never used as a road or area for vehicular access except on one occasion when Underwood cleared away debris and bush has failed to overcome the overwhelmingly strong evidence that the Dierssens intended the T57 easement to serve as an access road to Parcel Nos. 4-26, 4-27, and 4-28.

28. Intervening Defendants' arguments that the area is full of bush and was never cleared are equally unavailing because failure to clear bush is not an indicator of abandonment nor does it signify the extinguishment of a right.

29. A servitude benefit is extinguished by abandonment when the beneficiary relinquishes the rights created by a servitude." *Underwood v. Streibich,* 70 V.I. 179, 193 (V.I. Super. Ct. 2019). *See Restat 3d of Prop: Servitudes, § 7.4.*

30. The prevailing rule still applies that an easement cannot be lost by mere non-use, thus in order to establish abandonment of such right, the onus rests on the defendant to show both an intent to abandon as well as some overt act or failure to act which carries the implication that the owner neither claims nor retains any interest in the easement. *Smith v.*

*Defreitas,* 329 F.2d 629, 634 (3d Cir. 1964).

31. When a certain path is the only or the main access to property or to some of its plots and the right-of-way is indicated on the maps, the right of way, even if it is not registered, may not be dislodged by later owners of the servient estate. *Id. at 633.*

32. Abandoning an easement requires the evidence presented before the court to show that both the non-use and a showing that the [Plaintiff] has taken an affirmative step demonstrating a clear intention never to make use of it again. Simple neglect makes little sense given that no other property interest can be lost this way. *Malloy v. Reyes,* 61 V.I. 163, 178 (V. I. 2014).

33. Defendants have not offered any evidence of any overt act or failure to act which would suggest or imply any of the Plaintiffs failed to claim any interest in the implied easement or that they failed to retain any interest in their easement.

34. Unpaved roads are not uncommon in the Virgin Islands and the Supreme Court has noted "land in the Virgin Islands is scarce, and restrictive covenant[s] will be strictly construed against limitations on the free use of land, with all doubts to be resolved in favor of the unfettered use of land." *Streibich* at 506. *See also Thomas v. V.I. Board of Land Use Appeals,* 60 V.I. 579, 593 (V.I. 2014).

35. [Plaintiffs] are the holders of an easement allowing them passage over the R.O.W. as depicted in T57. *Streibich* at 508, 509.

36. Easement by prescription is defined in Restatement (Third) of Property § 2.16 as:

(1) a use that is adverse to the owner of the land or the interest in land against which the servitude is claimed, or (2) a use that is made pursuant to the terms of an intended but imperfectly created servitude, or the enjoyment of the benefit of an intended but imperfectly created servitude.

37. Easement by necessity is defined under § 2.15 which states:

"A conveyance that would otherwise deprive the land conveyed to the grantee, or land retained by the grantor, of rights necessary to reasonable enjoyment of the land implies the creation of a servitude granting or reserving such rights, unless the language or circumstances of the conveyance clearly indicate that the parties

intended to deprive the property of those rights. *Restat 3d of Prop: Servitudes, §
2.15 (3rd 2000).*

38. Plaintiffs properly abandoned their pursuit of easement by prescription and easement by
    necessity because both claims are inapplicable as there is an implied easement over T57
    map.

39. Defendants improperly assert that necessity must still be addressed because it is probative
    of the Dierssens intent. This is incorrect because the Dierssens intent is abundantly evident
    when taking into consideration that all deeds, except for the 1992, 1994, and 2016
    conveyances of Parcel No. 4-27, incorporated T57, by reference. The other exception is the
    1989 conveyance of Parcel No. 4-26 which referred to a 1988 map. T88 however referred to
    the original T57.

40. Defendants have not set forth any evidence to rebut the Dierssens actions demonstrating
    their intent to create a right-of-way.

41. All original conveyances from the Dierssens and many subsequent conveyances
    incorporated T57.

42. Even though the original and subsequent conveyances of Parcel No. 4-22A did not refer to
    T57, the Dierssens created an estate road running along the same path of the T57 R.O.W.
    As for Parcel No. 4-22B, the original Dierssens deed expressly stated, "[t]he whole
    comprising an area of 1.0 U.S. Acre, not including the right-of-way." The T62 map
    illustrates a similar annotation establishing the boundaries of the parcel "not including the
    R.O.W."

43. The Dierssens intent is unequivocal therefore the need to establish an easement by
    necessity is no longer relevant.

44. Marshall Dierssen's estate was properly admitted in the Probate Court of Farmington,
    Connecticut on or about May 9, 1968. On May 9, 1968, Judge W. Spencer Hulburt issued
    the following orders:

    > …ORDERED that the Administrator with the Will Annexed be and he is
    > hereby authorized and empowered to sell the personal estate of said estate
    > either at public auction or private sale, as he may deem for the interest of the

estate.

> …ORDERED that the Administrator with the Will Annexed make and file with this Court, an inventory under oath of all of the property of said deceased, duly appraised, within two months from the date hereof and that said Administrator with the Will Annexed exhibit his account to this Court for allowance within twelve months from the date hereof. And it is further

> …ORDERED that disinterested persons, be and they are hereby appointed appraisers of said estate.

Further, Macdonald Budd, Administrator *d.b.n. c.t.a.* of the *Estate of Marshall Dierssen* was granted several interim account distributions during the course of this probate including one on July 14, 1992, and issuing checks on the final account on January 20, 1993.

45. "A will executed without the Virgin Islands in the mode prescribed by the law, either of the place where executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of the Virgin Islands, provided such will is in writing and subscribed by the testator." *Title 15 V.I.C. § 15.*

46. "Where real property situated within the Virgin Islands, or an interest therein, is devised or made subject to a power of disposition by a will in writing, subscribed by the testator, duly executed in conformity with the laws of the Virgin Islands or of the place where executed or of the testator's domicile, and established or admitted to probate without the Territory and filed or recorded in the proper office as prescribed by the laws of the State or foreign country where the will was established or probated,… a copy of such will or of the record thereof and of letters testamentary granted thereon … authenticated as prescribed in such section 36 of this title, may be recorded in the office of the recorder of deeds in the judicial division in which such real property is situated, except that where it

appears that such will was executed without the Territory no copy of proofs or the record thereof and no statement of the substance of such proofs or of the record thereof shall be required; and such record in the office of the recorder of deeds or an exemplified copy shall be presumptive evidence of such will and of the execution thereof and of the letters testamentary granted hereon and of such petition for letters of administration and of the letters of administration granted thereon, in any action or special proceeding relating to such real property." *Title 15 V.I.C. §35.*

47. Accordingly, the Administrator *d.b.n. c.t.a.* of Marshall Dierssen's estate had legal authority to convey Parcel No. 4-27 recorded in the probate file and approved by the Probate Court of Farmington, Connecticut.

48. The Administrator's Deed conveyed to Susan Lugo on March 30, 1990, is not a void deed, therefore, Susan Lugo had the authority to convey Parcel No. 4-27 to Karen Underwood.

49. The Restatement (Third) of Property: Servitudes Created by Implication, § 2.11 states that (a) "[t]he creation of a servitude burden may be implied by the circumstances surrounding the conveyance of another interest in land, … and (b) [t]he identity of the beneficiary may be implied by the facts or circumstances of the transaction creating the servitude.

50. Section 2.11(e) further provides "servitudes are implied on the basis of the inferred intent of the parties to the conveyance. The inference may be based on language used in the conveyance, the object of the transaction, a use of the property made prior to severance, **the language used in referring to maps or boundaries, or restrictions imposed on the conveyed land**. The inference may also arise from the fact that, without a servitude, the land conveyed or retained by the grantor would be landlocked. The inference is based on the conclusion that, under the circumstances, it is reasonable to infer that the parties intended to create a servitude but failed to give full expression to their intent." *Restat 3d of Prop: Servitudes, § 2.11 (3rd 2000).*

51. Section 2.13 provides "in a conveyance or contract to convey an estate in land, description of the land conveyed by reference to a map or boundary may imply the creation of a servitude, if the grantor has the power to create the servitude, and if a different intent is not

expressed or implied by the circumstances:

(1) A description of the land conveyed that refers to a plat or map showing streets, ways, parks, open space, beaches, or other areas for common use or benefit, implies creation of a servitude restricting use of the land shown on the map to the indicated uses.

(2) A description of the land conveyed that uses a street, or other way, as a boundary implies that the conveyance includes an easement to use the street or other way. (*emphasis added*).

52. Finally, Section 2.14 further explains,

"unless the facts or circumstances indicate a contrary intent, conveyance of land pursuant to a general plan of development implies creation of servitudes … implied benefits that provides each lot included within the general plan is the implied beneficiary of all express and implied servitudes imposed to carry out the general plan.

53. The Dierssens subdivided Parcel No. 4 and constructed private roads with the intent to promptly generate property sales to recover costs. T57 map was created to include an easement to support the general subdivision plan to ensure all property owners had easy access to their respective properties.

### C. Scope of the Implied Easement

54. The most common type of implied easement (also referred to as an easement by implication) is an easement that is implied based on past use. *Streibich,* 74 V.I. 504. However, due to no past use here, it is necessary to consider an easement implied by an indication on a map that is incorporated into the deed.

55. "[T]he 'scope' of an easement is what its holder may do with it, the purposes for which it may be used." *McBurney v. Paquin*, 28 A.3d 272, 277 (Conn. 2011) (citations omitted).

56. "Typically, to discern the scope of an easement, 'the deeds, maps, and recorded instruments that created the easement must be considered in light of the surrounding circumstances to determine its nature and extent.'" *McBurney* at 277.

57. When construing the scope of an easement, a map clearly designating an area as devoted to a particular use creates a strong inference that a servitude will be created to implement

that planned use. *Id.* at 281.

58. The easement was designated by specific indication on the T57 map depicted as a R.O.W. that has been incorporated into all original property deeds conveyed by the Dierssens for Parcel Nos. 4-26, 4-27, and 4-28.

59. The first portion of "Parcel No. 4-22" is designated as Parcel No. 4-22B.

60. Both surveyor experts agree on the location of the T57 ROW. Both agree there is a valid twenty-foot (20') wide easement shown as the right-of-way as depicted on T57. The R.O.W. begins at the intersection of the main road at the entrance to Parcel No. 4-22B, running through Parcel No. 4-22B uphill, passed the two switchbacks, and along the boundary line of Parcel No. 4-22A and 4-26 (approximately half in each parcel) running across the southern side of Parcel No. 4-27 and terminating at the boundary line of Parcel No.4-28.

61. The R.O.W. starts at the intersection of the main road by branching off 75ft, more or less, from the northwest corner of "Parcel No. 4-22" on the T57 map and 166ft at the northeast corner heading uphill with the width measuring 20ft and in some areas 36ft wide. *Gauriloff Report – Master Exhibit 46.*

62. Starting at the entrance to Parcel No. 4-22B and through the middle of the entire parcel uphill in a zigzag pattern, the existing concrete paved road follows the right-of-way, but the road is not situated in the right-of-way. The right-of-way runs uphill towards the boundaries of Parcel No.4-26 and Parcel No.4-22A. Based on T62, the R.O.W. is within the "secondary estate road" and the road measures at 36ft in width at the switchbacks and then narrows after the second switchback to approximately 27 feet in width and continues on the path of the right-of-way. *Gauriloff Report – Master Exhibit 46; Master Exhibit 4.*

63. The right-of-way continues over Parcel No. 4-22A for another 252' in length, more or less,

on T62 until it narrows to 10-13 feet in width at the intersection of Parcel No. 4-22A and

Parcel No. 4-26, which then widens to 20' as it continues along the first half of the

boundary line of Parcel No. 4-22A and Parcel No. 4-26; veers inland and across Parcel

No. 4-27 and terminates at the western perimeter line of Parcel No. 4-28. *Master Exhibit 4,*

*(Wisehart's Drawing No. 3654-3).*

64. From the Point of Beginning (where Parcel Nos. 4-26 and 4-22A intersect) continuing along

the boundary line of those parcels until the right-of-way terminates at the western perimeter

of Parcel No. 4-28, measures 7, 964 square feet, more or less, 20ft in width, and consists of

.183 acre. (*Wisehart's Report- Drawing No. 3654-3*)

65. The T57 R.O.W., in its entirety, was never conveyed, destroyed, or abandoned.

66. Prior to 1961, the right-of-way bisected Parcel No. 4-22.

67. The surveyor's expert reports, the respective maps (including exhibits and site inspection),

and experts' testimony reveal no significant difference in the opinions of the respective

expert surveyors as to the precise location and scope of the T57 R.O.W.

68. The difference between the experts' survey maps represents approximately four and one-

half feet (4 ½ ft) between the bound posts of Parcel No. 4-25 and Parcel No. 4-26 which

is immaterial.

69. The size of the R.O.W. is a valid indicator the Dierssens did not intend for any portion of

the easement to be limited to a footpath or bicycle path; rather they intended for it to be

used as a perpetual easement for vehicular access across Parcel Nos. 4-22A, 4-22B, 4-26

and 4-27 until it reaches Parcel No. 4-28.

70. Plaintiffs have the legal right to traverse the Estate Road lying between Parcel Nos. 4-

22A and 4-22B. Defendants regularly use the same Estate Road for access to their

properties at 4-22A, 4-22B, and 4-26, therefore they cannot legally prevent or restrict

vehicular access to Parcel No. 4-27 or Parcel No. 4-28.

71. Plaintiffs have a legal right to the twenty-foot (20') wide easement for unrestricted vehicular access across Parcel Nos. 4-22A, 4-22B, and 4-26 to reach Parcel Nos.4-27 and 4-28.

72. The Defendant, Intervening Defendants, and their successors-in-interest have no legal right to prevent or restrict vehicular access across any section of the Estate Road depicted on T61 or the Secondary Estate Road shown on T62.

73. The Defendant, Intervening Defendants, and their successors-in-interest have no legal right to prevent or restrict vehicular access across any section of the T57 R.O.W. as has been located by this Court in these proceedings.

74. Plaintiffs can traverse the proposed estate road because the Dierssen deeds explicitly provide for an easement over "all roads in Parcel No. 4 which are now in existence or shall hereafter be constructed for ingress and egress from the Public Road or otherwise." *Streibich* at 502.

75. T57 R.O.W. was specifically designed and mapped for ingress and egress only from the main road.

76. The Supreme Court acknowledged that T57 is a complete map of the entire planned subdivision, while T61 and T62 are limited in scope to Parcel Nos. 4-22A and 4-22B only. These drawings are therefore of limited significance in determining the Dierrsens' intent towards the remainder of the R.O.W. *Streibich* at fn.15.

77. Hence, Plaintiffs do not need to show that the Dierssens had the right to convey an easement over Parcel Nos. 4-22A and 4-22B. Rather, Plaintiffs only needed to prove that they have the right to use the estate road across 4-22A and 4-22B and as such Plaintiffs have prevailed.

### D. T57 R.O.W. Upon 4-26

78. Defendants' arguments that Plaintiffs and Intervening Plaintiffs must use the lower road as it was intended by the Dierssens are equally unavailing as there is absolutely no evidence that the creation of the lower road came first in time, thereby extinguishing the use of the easement of record.

79. When Streibich purchased Parcel No. 4-26 in 1989, he was on notice that there was a 20-foot wide easement of record burdening Parcel No. 4-26. When Streibich purchased Parcel No. 4-22A in June 2007, this lawsuit was pending, and he was on notice that there was a 20-foot wide easement or R.O.W. of record burdening Parcel No. 4-22A.

80. At trial, Defendants offered no evidence of any overt act or failure to act which implies that Plaintiffs neither claimed nor retained any interest in their easement.

81. To the contrary, Plaintiff immediately attempted to use the easement right after purchase. Plaintiff Underwood promptly brought this action in 1995, when she realized she was restricted from having the use of the R.O.W. and Plaintiffs have fervently pursued the right to use the 20ft wide easement in the same manner as the Defendants do.

82. At trial, Defendants offered absolutely no evidence to refute Plaintiffs' position that the use of the T57 R.O.W. is for vehicular use, and is not restricted to a footpath or a bicycle path. Defendants' own expert surveyor report and graphic map overlays demonstrate vehicular use.

83. Intervening Defendants argument that the Dierssens deeded away much of the R.O.W. prior to the sale of 4-27 and 4-28 is incorrect. Although the Dierssens inadvertently deeded away approximately four random portions of 4-22A and 4-22B, the only purpose of creating the T61 and T62 maps was to depict the subdivision of Parcel No. 4-22. Nothing more.

84. While there is no record of the Dierssens conveying title in Parcel No. 4-22, the Court can draw a reasonable conclusion that the Dierssens intent was not to single out 4-22 to make

it an exception to the pre-existing T57map; and neither was the intent to create a private driveway for Parcels 4-22 and 4-26 only. It can be surmised the intent was to subdivide the 2-acre parcel of land consistent with most of the other 1-acre parcels in the general development plan of Parcel No. 4 to increase sales and recoup costs.

85. Thus, the Dierssens inadvertently deeded away sporadic, insignificant portions of the easement and likely did not intend to do so. Otherwise, Parcel No. 4-22A would have become landlocked without the easement.

86. Even without the subdivision of Parcel No. 4-22, the T57 map pre-existed all other maps, and the right-of-way was already established.

87. The Court concludes it would be illogical for there to exist an implied easement to Parcel No.4-26 and not to Parcel Nos. 4-27 and 4-28 when these three adjoining lots are situated on the same ridge facing the Atlantic Ocean.

88. Therefore, all purchasers were on record notice of the T57easement.

## E. Injunctive Relief

89. When determining injunctive relief, the Supreme Court of the Virgin Islands held the soundest rule for this jurisdiction is "a sliding-scale test, wherein a strong showing on one factor may decrease the weight assessed to other factors" allowing an injunction where "the probability of success on the merits is low if the Court determines that the moving party's likelihood of irreparable harm is great and the nonmoving party's likelihood of irreparable harm is very low." *Yusef v. Hamed,* 59 V.I. 841, 854 (V.I. 2013).

90. Here, the Supreme Court has affirmed the trial court's ruling that there is an implied easement across Parcel No. 4-26.

91. Plaintiffs have successfully proven at trial that Drawing No. 3654-3, survey map of the T57 R.O.W., with bearings and distances, depicts a 20ft wide easement across Parcel No. 4-26.

92. Defendants' expert surveyor report and map overlays of the T57 easement, T61 and T62 maps depict T61 and T62 maps track a similar path of the T57 R.O.W.

93. The Intervening Defendants argument that the Supreme Court may have ruled differently if they were allowed to intervene earlier in these proceedings is misplaced because the Supreme Court acknowledged the specific purpose of the T61 and T62 maps serve limited significance

and were only relevant to those two parcels, whereas T57 is relevant to the entire subdivision. *Streibich* at 508, fn.15.

94. T61 and T62 are of limited significance in determining the Dierrsens' intent towards the remainder of the R.OW. *Id.*

95. Judging from the size of the right-of-way, it is evident the Dierssens intended to make the right-of-way available for ingress and egress to prospective property owners of Parcel Nos. 4-26, 4-22A, 4-27, and 4-28 and their successors.

96. Defendants have failed to show an implied easement does not exist; which ironically is the same implied easement that Defendant Streibich argued was abandoned that is in constant use by him and the Intervening Defendants.

97. A movant suffers irreparable harm where there is certain and imminent harm for which a monetary award does not adequately compensate." *Yusef v. Hamed,* 59 V.I. 841, 854 (V. I. 2013). If the movant will suffer damages that will be difficult to ascertain, they are considered inadequate.[11]

98. The implied easement existed approximately 37 years before any one of the current Plaintiffs purchased any of the properties. After the first purchase in 1994, Defendant Streibich prevented Plaintiffs from enjoying the use and benefit of their properties.

99. The Supreme Court of the Virgin Islands held, "[i]n contrast to legal remedies like money damages, irreparable harm is an equitable relief."[12] *3RC & Co. v. Boynes Trucking Sys., Inc.* 63 V.I. 544 (V.I. 2015).

100. Defendants' engineering expert, Paul Ferreras, evaluated the topography and existing slopes of the easement in light of government regulations and safety concerns that establish safe drivable limits (the grade, slope, width, etc. that a vehicle can safely traverse) for road construction. Defendants argued the lower road which requires uphill road construction should be used. *Master Exhibit 65, pp. 7-8, 54-55, 66-67; Master Exhibit 47, pp. 1, 3.*

101. Irreparable harm has already occurred as the Plaintiffs have been unable to use the implied easement for almost 30 years. Further the harm is compounded when forced to excavate the lower road uphill to access their properties when an implied easement already exists on the

---

[11] *SBRMCOA, LLC v. Morehouse Real Estate Investment*, LLC, 62 V.I. 168, 188 (2015).
[12] *Id.* at 553.

upper road, thereby inevitably forcing Plaintiffs to extinguish a property right they already have to ingress and egress.

102. Increased traffic flow, as the Intervening Defendants claim, is not a reason to justify denial of injunctive relief neither does the temporary disruption of traffic flow during construction on Parcel Nos. 4-27 and 4-28 outweigh the Dierssens intent to grant the easement for access to those properties.

103. As it pertains to the boundary line of the implied easement running through Defendant Streibich's property at the entrance to his house, harm if any, can be minimized by using the southern portion of the 20ft easement away from Streibich's property.

104. While both surveyors placed their respective surveyor's flags in place, both agreed that the boundary of the easement runs through the entrance of Parcel No. 4-26, but the easement was in place from 1957, prior to construction of the home built by the Battles in the 1980s.

105. Streibich does not have a statutorily or contractually granted right to arbitrarily relocate the easement away from his house. The Court recognizes Streibich's desire to protect and avoid any property damage to his entrance (as the steps are partially within the easement).

106. The Court finds, however, that there is sufficient width for unrestricted vehicular traffic to pass without interfering with the Streibich property. Also, the hill can be excavated (even partially) to allow for ingress and egress traffic away from the Streibich entrance.

107. Greater harm will result to the Plaintiffs if they are continuously deprived of the right to traverse the implied easement the Dierssens intended for vehicular use to access their properties.

108. Greater harm will result to the Plaintiffs than to the Defendants if Plaintiffs are not granted injunctive relief. Neither Defendant has an exclusive right to the easement and because there is no exclusive interest or right to the right-of-way, the Court finds that Defendants suffer no harm from unrestricted vehicular use of the easement that they currently enjoy.

109. Increased traffic flow during construction or additional residents in the neighborhood does not outweigh Plaintiffs' entitlement to the right-of-way.

110. Where the discernment of a grantor's intent is necessary to determine the actions of of the parties, public policy dictates that the grantor's intent and wishes must be honored.

111. Maps that are incorporated into deeds by reference serve a specific purpose and must be interpreted in conjunction with the deeds and align with the intent of the grantor.

112. Based on the evidence presented the implied easement is not a footpath or bicycle path, rather Marshall and Sidney Dierssen intended to provide unrestrained perpetual vehicular access along T57 right-of-way for ingress and egress only.

113. Therefore, the Court adopts and incorporates into the deeds and title of record the survey map prepared by Ryan Wisehart, as the Cout finds the map to be more precise through the inclusion of the exact GPS coordinates, bearings and distances to put parties and all subsequent purchasers on notice of the exact location of the T57 easement.

**F. Conclusion**

**WHEREFORE**, pursuant to these Findings of Fact and Conclusions of Law, judgment is entered in favor of the Plaintiffs. Plaintiffs have prevailed by establishing that the scope of the T57 implied easement is for permanent vehicular use. Both expert surveyors agree on the location and the scope of the easement. Considering that in 1958 Marshall and Sidney Dierssen established the original right-of-way across Parcel No. 4-22 and had already begun the process of selling land from the subdivision, the intent was to create access to Parcel Nos. 4-26, 4-27, and 4-28. The subsequent division and sales within Parcel No. 4-22 a few years later in 1961, had no bearing on the pre-existing easement. The easement ensured Parcel No.4-22A would not become landlocked. In 1961 and again in 1962, the Dierssens re-emphasized their intent to grant a right-of-way when they mapped out the estate road and the secondary estate road on T61 and T62.

Further, both experts agree the easement is 20 feet wide across Parcels 4-26 and 4-27. There is only one path that leads from Parcel No. 4-22B to Parcel No. 4-28, and both experts agree the easement is located at the entrance of Parcel No. 4-22B and terminates at the western perimeter line of Parcel No. 4-28. Drawing No. 3654-3 and graphic map reproductions depicting the T57 easement, estate roads, and parcels are illustrative of Marshall and Sidney Dierssens' intent to provide a right-of-way as part of the general development plan of Parcel No. 4.

The Court accepts the calculations and GPS coordinates submitted with bearings and distances defined by Drawing No. 3654-3 produced by Ryan Wisehart. The drawing shall be filed with the Government of the Virgin Islands, Office of the Lieutenant Governor-Recorder of Deeds office placing all purchasers on notice of the permanent easement for vehicular ingress and egress only situated at Parcel No. 4, Estate Tabor & Harmony. An appropriate order accompanies this memorandum opinion.

April 26, 2024
_____
Date

_____
Renée Gumbs Carty
Senior Sitting Judge
Superior Court of the Virgin Islands

**ATTEST**:
Tamara Charles
Clerk of the Court

By: _____
Donna D. Donovan
Court Clerk Supervisor  04 / 29 / 2024